Kingsland *v.* Gould et al.

entered on a bond or obligation and warrant of attorney to confess judgment thereon, unless the plaintiff or his attorney shall produce, at the time of confessing such judgment to the court, justice, or judge, before whom such judgment shall be confessed, an affidavit of the plaintiff, his attorney, or agent, stating therein *the true consideration of the said bond or obligation,* and that the debt for which judgment is confessed is justly due," &c. Now this affidavit does not state consideration of the *bond,* but merely the consideration of the *assignment* of the bond, and was, therefore, not a compliance with the words of the act.

*Per Curiam.* Let the rule setting aside the judgment be made absolute.

---

HENRY KINGSLAND *against* WILLIAM GOULD, JOHN DOD, RICHARD OUTWATER, NATHAN SQUIER and JOSEPH T. BALDWIN.

ON CERTIORARI.

1. The obtaining an injunction out of Chancery to prevent commissioners proceeding in a certain matter, does not deprive the party of his remedy in this court by *certiorari.*

2. There being a court of appeal does not prevent the proceedings of the inferior court from being brought before the Supreme Court by *certiorari.*

3. A *certiorari* operates as a *supersedeas,* and the court below cannot proceed after the *certiorari* is granted.

---

This was a *certiorari* issued out of the Supreme Court to bring up the proceedings of commissioners appointed by "An act supplementary to an act passed on the twentieth day of January, eighteen hundred and eighteen, entitled an act to authorize Edmund William Kingsland, Jacob Van Winkle, and others, their heirs and assigns for ever, to

erect and maintain a dam, sluices, and floodgates across Kingsland creek, and such other water works as they may think necessary, in the township of New Barbadoes, in the county of Bergen, to improve their salt marsh or meadows," and a supplement thereto passed the fourteenth day of January, eighteen hundred and nineteen.

*Pennington* moved to set aside the *certiorari quia improvide emanavit.* He contended, that no *certiorari* lay, in this case, to the commissioners. 1. Because, by the 4th section of the act, it was provided, that in case of any dissatisfaction on the part of either of the proprietors, in consequence of assessments, such proprietor might apply to the commissioners of appeal of New Barbadoes and Bergen, who were constituted a court of appeal to take cognizance of such application. That the legislature had provided this domestic tribunal for the purpose of settling these matters, and, therefore, this court could not interfere. 2. That Henry Kingsland, previous to the issuing of this *certiorari,* had filed a bill in Chancery to set aside the proceedings of these commissioners. The chancellor granted an injunction, and, upon the coming in of the commissioners, the injunction was dissolved. The plaintiffs then took no steps in their Chancery cause, but come into this court and obtain a *certiorari* to bring up the proceedings of the commissioners, and the same reasons are filed substantially as are stated in the bill. He then offered to read the bill in Chancery, to shew that the facts were as he stated.

*Chetwood,* contra, objected to his reading the bill; because he had no right to enter into the proceedings of another court on this motion to quash. Besides, the motion itself was too late; it should have been made at the last term, (the term when the writ was returned).

KIRKPATRICK, C. J. Is there any case where you can make an application of this kind, after the term to which

the writ is returned? If the application to quash is merely for irregularity, it should have been made at the term the writ was returned.

*Frelinghuysen*, attorney general, on the same side with Pennington, said, that the reason relied on was not irregularity merely; but that there was another tribunal before which this action was pending, and that this court had no jurisdiction of it, upon the principle, that wherever there was a decision before a court of competent jurisdiction it was conclusive upon the point.

*Chetwood.* The gentlemen, for their first point, rely upon the 4th section of the statute. The first reason assigned was not confined to the assessment. But even if it was, yet he contended, that though an appeal was given it did not take away the right of a party to bring a *certiorari*, and unless the *certiorari* was expressly taken away by the statute, the party could not be deprived of the benefit of this writ. *Doug.* 555, *note. Black Rep.* 231. Before our late act for the trial of small causes, although an appeal lay to the Common Pleas, yet a *certiorari* would also lie, and was frequently brought.

The second objection is, that the party was proceeding in the Court of Chancery. This assessment was made out by the commissioners. They were proceeding, and actually had advertised to sell, and would have sold it before a *certiorari* could issue, because there was no court sitting to whom the party could apply, and, therefore, he was obliged to apply to Chancery for an injunction, and it was upon that ground alone that it was allowed, because the chancellor said he had no jurisdiction of the cause, and granted it only for the reason that, if it was not granted, the property might be sold before the party could have any redress.

But this court is asked to set aside the *supersedeas*, if they will not the *certiorari*. But the court would not do it where a man's freehold was in question. If the court think proper

to sustain the *certiorari*, will they, during the pendency of the suit, permit the property to be sold. If they do set aside the *supersedeas*, and the property is sold, and the proceedings should be determined illegal, how could the property be got back again? If there had been no *supersedeas* this court would have granted a rule to stay the sale.

*Southard.* This is a motion with a double aspect—first, to get rid of the *certiorari*; second, of the *supersedeas*.

1. It was said, that an application had been made to Chancery, and the bill had been dismissed; the principle, as to decisions of concurrent jurisdiction, did not apply; the question was, whether this court could be deprived of the exercise of its jurisdiction because there were proceedings in Chancery. If there be proceedings in two courts of concurrent jurisdiction, the proceedings in one will not arrest the proceedings in the other, until there has been a decision. But the Court of Chancery had no jurisdiction in this case; it could have no jurisdiction in these cases but upon two grounds: first, to prevent an enormous evil; second, where there is no remedy at common law. I apply to a court that has no jurisdiction and can get no redress. I then apply to a court which has jurisdiction; shall I be told I have made an application to the court which has no jurisdiction; that, therefore, the court which has jurisdiction will give me no redress? But the application was made to Chancery, only until we could apply to this court. The application there was only for temporary relief; but the application here is of a more permanent character.

The second objection is, that there is an appeal to another tribunal, and that, therefore, this court has no power to issue the writ of *certiorari*. No such appeal ever can take from this court the right to issue its *certiorari*. The power to issue this writ is an original power, inherent in this court, and cannot be destroyed because an appeal is given to another tribunal; if it could, there would be some case to

be found upon the subject, and none has been cited. This power can never be taken away, except by express negative words. In cases of roads this court will direct their *certiorari* to the surveyors or freeholders, or Common Pleas.

Is the appellate jurisdiction of the Common Pleas of Bergen to correct the illegality of the proceeding? No! they only inquire into the justice and propriety of the proceedings; the act speaks only of assessment; the Court of Common Pleas are to look into the extent, injustice and inequality of the assessment, and not into the legality of the proceedings.

With regard to the *supersedeas*, the *certiorari* is in itself a *supersedeas*, and they ought to have stopped their proceedings upon receiving the *certiorari*, and the *supersedeas* is a mere notice to tell them you have not stopped under *certiorari*, and if you do not now stop you will make yourselves liable.

KIRKPATRICK, C. J. said, there is no doubt that a *certiorari* is a *supersedeas*.

*Southard.* It is a very extraordinary course of argument to say, because we disregarded your first writ, therefore you are to set aside your second writ.

*Frelinghuysen* said, the court would perceive the act was made to improve a meadow. *2d sec. of the act passed* 1820. The legislature intended to vest in the commissioners some serious powers. This was a neighborhood concern, and the legislature intended to create a domestic tribunal.

It is said, this appellate court had no authority to review the proceedings of commissioners, except as to the assessment; but all the important reasons filed regard the assessment. Now, if Mr. Kingsland was bound to submit to this assessment, then all these reasons must be struck out.

The bill prays for full equitable relief. It will not answer for the gentleman to say, that the only object of the bill was to pray an injunction until they could obtain redress from

the Supreme Court. It is said, the Court of Equity possessed jurisdiction to grant the injunction, but no farther. This suit is now pending in Chancery, and Mr. Kingsland can there obtain all the redress that the Supreme Court can give. The bill in Chancery was filed merely to delay the proceedings, and after the answer comes in, he abandons that court and applies to a judge of this court for a similar writ in substance.

Suppose he had first obtained a *supersedeas,* and, upon the investigation, the *supersedeas* had been set aside or dismissed, could he then have gone to Chancery for an injunction ? I apprehend not. No ! the decision of a concurrent jurisdiction, directly upon the point, is conclusive, wherever the matter comes before another court of concurrent jurisdiction. The case from 1 *Black.* shews that the *certiorari* would be irregular if interposed between the original and appellate jurisdiction. Here the *certiorari* was directed to Common Pleas, the appellate court, and not to the justice.

I do not mean to contend, that the statute takes away the authority of this honorable court, but submit, that, after what has taken place in Chancery, Mr. Kingsland is barred of any farther remedy. But, at all events, the *supersedeas* cannot be maintained. The *certiorari* can be granted only in term time. Can a party go to a judge, *ex parte,* in vacation, and, upon his own statement, obtain a *supersedeas ?* The *certiorari* was no *supersedeas ;* it was a mere writ requiring them to send up a certificate of what they had done.

*Per Curiam.* We are of opinion, that the proceedings in Chancery have no effect on this court; and notwithstanding there is an intermediate court of appeal created by the statute, (see section 4) as to the mere assessment, yet the party may bring his *certiorari.* It is a privilege similar to that which is allowed upon proceedings in the courts for the trial of small causes, you may take the appeal and bring the *certiorari* also. We shall, therefore, retain the *certiorari.*

The *certiorari* is itself a *supersedeas*. The court below cannot proceed after the *certiorari* is granted; it would defeat the whole object of the measure. The *supersedeas* is a cautionary measure, and, as the *certiorari* is sustained, must remain in force.